and Sarasota County Supervisor of Elections. Before we get started, I just want to say we hope everybody there is doing all right and that you haven't experienced any significant damage from the storms. And with that, we will begin with Mr. Polelle. Good morning. My name is Michael J. Polelle. I'm here representing myself. Under the doctrine of Pelfrey v. Cobb County, I have both traditional standing and municipal taxpayer standing to bring this lawsuit challenging the constitutionality of the Florida closed primary law. As for municipal standing, the Pelfrey court said it settled law that a municipal taxpayer may sue for the illegal expenditure of monies without any additional factor involved. Now, the district court here erred by saying that I did not allege any kind of exception, but the exception that the court mentioned, the Flast-Hein line of cases, only applies to federal and state taxpayers. That was exactly the same error that was made in Pelfrey, where the 11th Circuit corrected the district court and said even though the taxpayers there were suing for an establishment of religion clause, that did not mean they had to... Mr. Polelle, what remedy do you seek? What relief do you want? I seek a declaratory judgment that the current version of the Florida closed primary is... Let's assume that's the case. What relief do you want? An injunctive relief preventing... Do you want to run for office or something of that sort? Your Honor, not at all. You have no... Not at all. Not at all, and you don't have candidates. I'm not a candidate. You just want the law knocked out. Is that it? I just want people who have a constitutional right to remain free of political parties. They have the same rights of people who are political true believers. Oh, yeah. That's all I want. Do you want a total open primary process or the right to pick and choose which primary in which you participate? I think, Your Honor, there are many versions. That's up to the Florida legislature. There are four states that have a nonpartisan system. No, and you make a good point. I think, and as I try to approach this case not to conflate whether or not you will ultimately win on the merits, as opposed to whether or not you even have a right to bring your claims, which is what standing is all about. But I guess, how else would you support not conflating those two things when it comes to determining whether or not you really have an injury here? Well, I think, fortunately, Pelfrey spelled it out very clearly, that the settled law is that a municipal taxpayer, not a state or federal, and I'm not suing for that, that a municipal taxpayer who pays real estate taxes like I do does have a right to sue as an injury in fact when money is spent for an illegal or unconstitutional purpose. Now, here's the irony, Your Honors. I pay real estate taxes to a Sarasota County commission in which I cannot vote for in the primary because that's a partisan election under Sarasota law. Now, therefore, I am helping to fund an election in which I cannot vote. Now, the answer of the state and opposing counsel is, what's the problem? Just vote in the general election. The fact is that no non-Republican, as I understand it, has ever been elected to the Sarasota County commission since 1966. So, in effect, I'm in the situation that African-American voters were in in the white primary cases. It's not by accident that all the disputes involved the Democratic primary in the white primary cases because it would have been a hopeless to vote in the Republican primaries in the early South in the 1900s. But you're equating race with political affiliation? No, on the contrary, Your Honor. The white primary cases arose because at that time, the state very lightly regulated primaries. The parties basically controlled primaries. In many states, they paid for the expenses, which would be one relief that could be granted. Let the parties pay on their own dime instead of taxpayer money. But put that aside, the parties at that time also often prepared the ballots. And in some states, they counted the ballot. So, therefore, in the white primary cases, all the Supreme Court had to go on was the action of the political parties, which caused problems because how can a private political party be a state actor? Indeed, at one time, primaries were not even considered part of the Constitution until U.S. v. Classic, where they were given the same rights as the general election. Voters had the same rights in both. Now, with Smith v. Allwright, the epitome of the white primary cases, Thurgood Marshall adopted the reasoning U.S. v. Classic. He no longer had to argue that a political party or some faction of a political party was state action. That became very problematic. How far can you take that without infringing the right of political parties? By the time of Smith v. Allwright, he had U.S. v. Classic that said the very fact the state now runs these primaries and actually controls them, that's state action. Therefore, when the state prevents voters from voting in primaries, there's no problem about state action at that point. That's the similarity. So what I'm saying in answer to your question is we no longer need race as a factor in what I'm arguing. It gets to the very basic constitutional right of a citizen, regardless of skin color. Right. And I understand that. I guess what I'm trying to reconcile is in the white primary cases that you just described, there were Democrats and there were Republicans who would have otherwise been eligible to vote in those primaries, but for their skin color. In this case that you're presenting, there is no other characteristic. It's solely based on your political affiliation. And so that's why I asked you that question about the implication of the white primary cases. Quite right, Your Honor, that I am basing on something even more fundamental, and that is the right of an American citizen to hold political views that are not in accord with the preferred views of the state in which he or she lives, regardless of race. If the white primary cases have any meaning, I think the similarity is this, that you can't say to a voter based on race or political belief that you have no problem if you can't vote in a primary, because all you can just vote in the general election. When the only game in town is a primary that controls the election, that's where the important issue has to be met. And so you're quite right, Your Honor, this case does not depend on race. It depends on the fundamental right of political belief, which is a vital part of our First Amendment. Now, the court also went on to say that there was no traditional standing. Now, in that case, the district court committed error because it confused the merits with standing. If you look at the cases it cites, La Casa versus Townsley and Osborne versus Cox, those cases cite Supreme Court cases, none of which involve standing. Mr. Morelle, if we declare the primary system or whatever it is you were talking about unconstitutional, what can you do then? Where do you stand after that? No parties or no what? No, no, there are a number of possible solutions. If it's declared unconstitutional, what do we have left? What you have left is a burden on the Florida legislature to correct the problem. Well, no, I understand that. We have a vacuum until the legislature does that. Is that right? Well, there could be a prospective ruling by the court to give the legislature time. No, no, you want a ruling right now. I'm trying to understand where does that leave the world in Florida or Sarasota County? I don't think the ruling necessarily has to go into effect now under injunctive relief. What happens if it goes into effect? What do we have? If it goes into effect, we would have a situation in which all voters would be able to vote, I assume, in a primary. I doubt either party would want that to happen without the legislature correcting the problem. Would there still be a requirement for primary elections under existing law if we did that? Well, as I understand Florida law, the two major parties have primaries. The minority parties, some 11 of them, only are allowed a primary, state-funded primaries, if they get a certain percentage of the vote in the general election. I think it's 5%, which again shows you the dominance of the two-party system. I'm asking you a more fundamental question. So just to pick up on Judge Joblock's question, if we were to invalidate the closed primary system, I guess, for both the state and the county, is there still the availability of holding primaries at all, and would they just be open, or would there be no primaries until the void were filled? Well, I think, Your Honor, it's somewhat similar, as I see it offhand, with Brown v. Board of Education, a dramatic constitutional ruling that completely changed the political face of the United States. What the Supreme Court said, realizing the realities, is that it should be implemented with deliberate speed. So I think courts are flexible enough to fashion remedies, especially with injunctive relief, to take into account political realities. Because otherwise, what's the solution? I'm sorry to interrupt. I just want to make sure I understand your answer. I think I'm hearing you to say there would be a void until such time as the legislature took action. But in your view, that wouldn't matter, because we could just direct the legislature to do so quickly. But I just want to make sure that's what your answer is. If it's not, then I want to give you a chance to tell us what it is. What I'm asking for is a type of negative injunction that at least would prevent the floor legislature, or the administrative authorities, from enforcing the closed primaries that currently exist. For example, there might be a limited injunction. The most egregious part of it is that I cannot even vote in elections that my taxes fund, where it's clear that the primary in Sarasota County determines the outcome of the election. Unless you vote in a Republican primary, you have no influence over how your tax money is being used in an election. So it could be narrow. Now, I'm not saying you have to give a total relief. That's beyond my ability. Your court may decide that it needs to be a narrower one, that it needs to only direct it against certain elections, like the Sarasota County election, which is the most egregious. So let's talk about... Oh, I'm sorry. No, I'm sorry. No, do you want to finish your response? No, I'm finished, Your Honor. All right. So in terms of municipal standing, would you say that our circuit's case law, in terms of the test to apply to answer that question, is firm? It seems like there's some circuits that have also expanded upon this out-of-pocket requirement and how close in relationship the taxes you pay have to be to the actual operation of the primary process you're challenging. So how would you define our test and if there's anything in addition to be adopted or clarified? I'm glad you asked that question, Your Honor. The question is answered by the case of Smith versus Jefferson County School Board, where the court said that the out-of-pocket, the pocketbook rule has never been applied by most overwhelming number of jurisdiction in municipal taxpayer cases. It has only been applied in state and federal taxpayer cases. In fact, the court said, I think memorably in my memory, was that the standing of a municipal taxpayer does not turn on whether it is a bargain to violate the First Amendment. Indeed, my analogy is this. Let's say A owes B $2,000. B embezzles the $2,000 because B says A owes me a debt of $2,000, so everything's equal. No, it's not. It's still a crime. If B were to invest that money and make $4,000 and say, hey, what's the problem? I gave, I earned money. It's still a crime. So I think our law is very well stated in Pelfrey versus Cobb. It represents, as the court said, the settled law and that standing is the threshold question that must be decided first before you get to the merits. Now, the district court conflated the merits with standing. None of the Supreme Court cases that are cited in La Casa or in Osborne mentioned standing. I don't even think they mentioned the word standing. They're concerned with the merits.  I was taking you over your time, and that's fine.  We're asking questions. You've reserved a minute for rebuttal, and we're going to hear now from, is it Ms. Gaylord who's going to be speaking first? Yes, Your Honor. Can you hear me? Yes, thank you. Okay, sorry. My power just flickered, and unfortunately, I didn't hear the last few minutes of argument because I was rejoining the Zoom from my cell phone. Okay, well, so I guess what we can do is we can have Mr. Polelli restate the last few minutes so that you're not at a disadvantage, and we'll just ask Mr. Polelli to review the arguments that he made in the last few minutes. Mr. Polelli, if you could wait just a moment. I will do that.  No, if you could wait just a moment, please, Mr. Polelli. I'm sorry. That's all right. Ms. Gaylord, I'm sorry. What were you going to say? I'm all right to proceed. I'm not sure how good my connection is going to be, so we might want to make hay while the sun shines here. All right, we'll let you proceed then. Okay, thank you, Your Honor. My name is Ashley Gilyard. I'm with the law firm of Bentley Goodrich Keeson here in Sarasota, Florida. As you may know, we just took a direct hit from the hurricane, so I apologize for the boarded-up window and the sound of chainsaws around me, but luckily we are able to be here today. Apologies are necessary. Okay, thank you. So I represent the Sarasota County Supervisor of Elections, Ron Turner, in this case, and I will be addressing the issue of municipal taxpayer standing and counsel for the Secretary of State, Ashley Davis, will be addressing the issue of general standing. We're also both prepared to address the merits of the case, as the court may wish us to do. I will start on that point by saying that the district court had two holdings here. One was on the issue of standing, finding that Mr. Polelli had none, and the other was on the failure to state a claim. There's a long line of Supreme Court precedent, most notably Democratic Party v. Jones, that tells us that the associational right at stake here is that of the political party and not the individual voter. And the 11th Circuit has recognized that as well in Osborne v. Cox, where the court noted that it was aware of no case in which an individual was— I'm sorry. Mr. Polelli, could you please turn off your audio? Oh, I'm okay. Sorry, Your Honor. That's all right. Ms. Geddes, can you please give Ms. Gilliard an extra 30 seconds? And Ms. Gilliard, what I wanted to ask you about was, I understand what you're talking about, that it's the right of the political parties, but here there's a different right that's being raised, as I understand it, and that is not the right to vote in the particular election, but instead the right of the individual, Mr. Polelli in particular, to be able to have a meaningful vote. He's alleging that what happens here is that the entire election is decided at the primary stage, and so by not being able to vote in the primary stage, he loses any kind of meaningful vote, which is an individual interest and is not the interest that was involved in Osborne or the other cases where we talked about how the right to select who the party is going to decide as the nominee belongs to the members of the party, and I want to know, would you like to address that? Yes, Your Honor, and Florida does in fact have a provision of its constitution that allows for a universal primary contest where there is no real general election to be had. In other words, if the primary is going to be the selection of a party's candidate, and that party's candidate will not be opposed in the general election, then non-affiliated voters like Mr. Polelli are permitted to vote for that candidate, so that does address that issue, and there is also other precedent where the court has recognized that yes, there is some associational interest that these voters may have in choosing a candidate, but that interest is outweighed by the party's own associational right to choose its own standard bearer. Sorry to interrupt though, but so here's the thing, right? I'm concerned that your first answer, you've given two answers, your first answer conflates the standing inquiry, the injury in fact inquiry, with the merits inquiry, and as to your second answer, again, one of the rights he's asserting is the right to a meaningful vote, which is very different from the associational right, which I think you've responded with, and so I want to know if you have a response to his position that his injury is the violation of his right to a meaningful vote, because the entire contest is decided at the primary level, and again, we're just talking about standing, not the merits. Yes, your honor, let me try to address that. I do think that what we have here is essentially a political problem. I mean, his issue seems to be that only a certain party or parties have effectively organized themselves such that they're running candidates for local offices and succeeding in having voters endorse that platform and wishing to associate with them, so I think that's really a political problem and not a legal one. I think that, you know, forcing a political party that has... So let's put it into standing speech. Why doesn't that count as an injury in fact? Because in order to have an injury in fact, he has to have a cognizable injury or some, you know, violation of a constitutional provision, and it's already... Right, and so why isn't it... Why doesn't not having a... Because we have to accept as true his allegation that he doesn't have a meaningful vote, because that's how we do standing analysis. Again, not talking about the merits, just standing. Why doesn't his allegation that he doesn't have a meaningful vote count as an injury? It's not an injury. I'm sorry. Cognizable injury. It doesn't count as an injury because the only remedy to what he's alleging is his injury would be to violate recognized associational rights of others, and there is a balancing that has to be done there, but the court has already done that balancing and found... But again, that goes to the merits. That doesn't go to whether there's injury in the first place. Maybe it's a weak injury from your point of view that can outweigh the associational interests. That might be the case, but that is a question for the merits. That's not a question for whether he has an injury in the first place. At least, I don't think it's a question for whether he has an injury in the first place. That's what I'm trying to sort of suss out here. It seems like you do think it goes to whether he has an injury in the first place, and I'm just trying to understand why and see what I'm missing here. Yes, Your Honor. I think with constitutional standing cases, it can be hard not to conflate those things, admittedly, but I do think that there has to be a recognized associational right in order for Mr. Polelli to have standing, and as a matter of settled law, he just does not have a recognized right to assert here. Are you saying, in part, that other people have to be joined in this lawsuit for Mr. Polelli to get a relief because you have other voters and rights of association, all these are out there, and they're not represented in this case. They're not parties. I don't know whether, so you have a situation where Rule 19 and standing sort of intertwine. Yes, Your Honor, that's correct, and as the courts have repeatedly held, it's the political parties who have the right to assert here, and the state of Florida has had. Problem is, I understand. I agree with you. He does not have an associational right to participate in the primaries, but what he's alleging is that his right to a meaningful vote in the election is violated by the closed primary system, and what I don't understand is why that doesn't count as a cognizable injury. That's what I'm trying to figure out. You can go ahead and answer that question. Yes, Your Honor, so the party with the interest is not before this court, as Your Honor just indicated, and we've had a closed primary since 1913 in Florida, and no party has ever objected to that or attempted to expand its right to associate to voters like Mr. Polelli, so unfortunately, I just don't think that there is any associational right that he can assert here in order to have standing. All right, thank you, and we're going to hear next from Ms. Davis. Thank you, Your Honor. I'll start. Thank you, Your Honor. I will start with your Judge Rosenbaum's problem. The idea that Polelli's right to vote is diluted is not a legally protected interest either as a matter of standing, and that is because, well, first I'll point you to footnote five in the Jones decision where the Supreme Court said that if the fundamental right to cast a meaningful vote were really at issue in cases like this, then there would be a particular type of primary format that would be constitutionally required, which the court said no one believes because the states are generally free to choose the manner of elections, and I'll also say that this circuit in Osborne rejected any dilution injury stating that an allegation that voters were, quote, outvoted in relation to selecting the candidate of their preference, quote, at the party primary, quote, does not identify the violation of any fundamental right in relation to voting, end quote, and also the circuit in Jacobson said that a dilution of political choice really is a political question that the courts cannot answer, and what Mr. Polelli really wants here, as Ms. Gaylord pointed out, is really better political options. That is a political question. He has no constitutional right to better political options. So in addition to what Ms. Gaylord said about the universal primary amendment, to cap out that, and then I want to address Judge Abudu's entwinement issues, we have to focus on what Mr. Polelli can do despite the challenge statute. He will be able to vote in the general election for the party's nominees, and importantly, for any NPA candidates who are likely to be more closely aligned with Mr. Polelli's political values. NPA candidates in Florida do not participate at all in primary elections. They head straight to the general election ballot. Also, as a participant in the primary elections at large, Polelli gets the full canvassing, tabulation, and he, in his subsequent briefing before you, he says he does participate in those primary elections just for those nonpartisan races. Turning to Judge Abudu's issues with perhaps entwinement on the merits, as well as your own issues with the entwinement, that's a different cubbyhole of standing analysis, and the courts who have dismissed cases like these on standing did not address that entwinement issue between standing and the merits. I think Newsom in one of the concurrences of your court mentioned that the Supreme Court cases note constitutional claims are kind of in their separate own cubbyhole. They are not like the statutory standing cases that involve an entwinement issue between standing and the merits. Let me give you this example. If you were to get to the merits, you'd analyze this claim using Anderson Burdick's seesaw. You'd be weighing the burden on plaintiff's rights against the state's interests. There is no determination at that point needed that plaintiff has rights that are burdened because that determination is and should be made at the standing stage where the existence of a legally protected interest is an express element. Also, to address Judge Choufax, can you unpack that a little bit? Because first, I think that your colleague, Ms. Gaylord, actually illustrated the problem in her responses to Judge Rosenbaum, where when we were talking about standing, the responses still went in some ways arguably to the merits. And so even with a balancing test under Anderson Burdick, it still seems that you're jumping too far ahead when it comes to just determining whether or not he has the right to bring a claim based on an allegation that we have to accept as true at this very stage of the litigation. So I still am not clear on how you all are encouraging us to draw that very fine line. That there is no legally protected interest, that's an element that's baked into standing. And that holding, the holding that if you don't have that legally protected interest, either through association, which I think my colleague was talking about, or through this meaningful vote dilution, if you don't have that legally protected interest, the courts have dismissed the cases based on standing. And I think that holding is inherent from the Supreme Court's opinions and the fact that there are no cases in which plaintiff voters alone have been found to be entitled to any such rights, either the association right or the equal protection dilution right. And I think this court has inferred as much in Osborne when it read Jones to hold that the standing to challenge a state's regulation of a political party's primary belongs to the party itself and kicked a party voter for lack of standing to challenge another party's loyalty oath. The Ninth Circuit in Siskis, the three-judge panel in Connecticut District Court in Nader, and the Southern District, of course, in La Casa, have all made that same inference and additionally specifically held that an NPA voter lacks any legally protected interest to vote in a closed primary. Turning to Judge Choflat's questions and the rest of the court's questions about what happens in the vacuum between invalidating this provision if the court were to do that and the legislature choosing another method, which again highlights this political question issue, there would be primaries under different unchallenged statutes, but there would be a big administrative problem because other unchallenged statutes divide the ballots based on parties. That's how we perform balloting and divide voters. So we'd be very much administratively in this big political and administrative chaos position if the court were to invalidate this closed primary statute. Unless, of course, as in I think it's Tashian where it's the party that's now advocating that it be more open. So I guess that goes to the issue of whether or not Mr. Pollelli is the right litigant. If you had one of the parties coming to you to say we would like to open it up, then that would be proper. Is that correct? That would absolutely open at least the argument that the party has standing. I, in that situation, probably be pointing to some dissents and concurrences and other cases, but yes, at least that would be a completely different analytical standpoint for standing if there was a political party asking to invalidate the statute, yes, your honor. Which means that the administrative burdens that you just described would be less important or would have less value for purposes of making sure that the party itself was ultimately successful and then could expand the primaries in the way it's advocating. No, your honor, because there would still be those unchallenged statutes that require balloting is based on the various different parties. We also have several minor political parties as well. So the whole system in order to yield to the desire, the invite of a political party to invite NPAs, for example, would necessitate a whole reorganization and amendments of the election code and how we ballot and canvass and tabulate. All right, thank you, Ms. Davis. And Mr. Polelli, you have reserved one minute for rebuttal. First of all, California Democratic Party versus Jones only protected the First Amendment right of parties to pick their nominees. That was the only holding of the case. In fact, Justice Scalia specifically left open the possibility that if you could to have a system that did not allow non-party members to pick nominees, it would be constitutional. And that's exactly what happened in Washington State, followed by Alaska, followed by Nebraska, and followed by California in some elections. Now, Judge Shufflat raised a good question. It occurs to me off the cuff that one easy way, and I know, of course, it's up to the court and the legislature, is keep your close primary, but have a separate primary for independents. That would be very simple until you could work out a more complex solution. The point is courts have dealt with these problems and they've worked out creative solutions. And I'm sure that this can be done in this case. So it's a false dichotomy that we have to choose between political parties and individual voters. The Supreme Court has made that clear. It's a false dichotomy. The idea that I cannot have standing runs counter to Cusper versus Pontikus, where Mrs. Pontikus wanted to appeal, and she was allowed to. She had standing, according to the Supreme Court. The very case of Arcea versus Florida Secretary of State allowed a voter who was purged, purged by the Florida election because she was a non-citizen, to vote when it was determined they made an error. Now, she was allowed to vote. And in that case, the 11th Circuit said, well, even though she voted, we're not going to say it's moot because it could come up again. That's exactly my case. Unless the court takes actions, nothing will happen. Thank you, Mr. Polelli. I think we have your case. And we wish you, Ms. Gelliard, good luck with the storm aftermath and any of the rest of you who may be also suffering the consequences of the storms. All right. Thank you both very much. Thank all three of you very much. And we will proceed with our next case for today. Thank you.